UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

In re                                              Case No. 23-46912-tjt
                                                   Chapter 11
EXIGENT LANDSCAPING, LLC                           Judge Thomas J. Tucker

Debtor
_____/

# CREDITOR MOHAMED SAAD'S OBJECTION TO CONFIRMATION OF DEBTOR'S SUB CHAPTER V PLAN OF REORGANIZATION

Creditor Mohamed Saad ("Saad"), by and through his counsel, OSIPOV BIGELMAN, P.C., files his Objection to Confirmation of the Debtor's Sub Chapter V Plan of Reorganization (Docket #84, the "Plan"), and respectfully states as follows:

## RELEVANT BACKGROUND

Mohamed Saad is a homeowner who, unfortunately, hired the Debtor to install a swimming pool at his residence. The parties signed a contract for the work on June 27, 2022, with a total price of $554,545.00 (see attached Exhibit A). The contract required Saad to make a down payment and several "progress payments." Between July 1, 2022 and May 4, 2023, Saad paid the Debtor $350,000.00. In addition, to prevent the placement of liens on his property, Saad directly paid contractors $37,786.56, though the responsibility for such payments was the Debtor's.

The Debtor failed to perform as required by the contract, abandoned the project, and left Saad's home in disrepair. Much of the work that the Debtor did perform was performed improperly and inadequately (see correspondence from Justin Booth, Coastal pool construction company ("Coastal"), attached hereto as Exhibit B). Upon information and belief, Debtor and its principals fraudulently failed to use the funds provided by Saad to pay subcontractors and suppliers associated with the contract, in violation of the Michigan Builder's Trust Fund Act, M.C.L.A. § 570.151, *et. seq*. ("MBTFA"). Meanwhile, the Debtor's principal used the funds paid by Debtor's customers, including Saad, to support his lavish lifestyle.[1]

The additional cost required to remediate Debtor's grossly improper work and to complete the contracted job properly is $484,982.73 (see quote from Coastal, attached hereto as Exhibit C). Saad will therefore be required to pay $872,769.29 ($387,786.56 already expended plus $484,982.73 to remediate and complete) to properly complete the job that the Debtor contracted to perform for $550,000.00, resulting in damages in the amount of $322,769.29. Debtor's Plan proposes to reject the contract and treat Saad as a Class 23 general unsecured creditor.

---

[1] See *United States Trustee's Motion to Convert Case*, Docket #91, which Saad incorporates herein by reference, in particular, paragraphs 6-7 and 10-24.

# ARGUMENT

## The Plan is Not Feasible

Under the Small Business Reorganization Act, a Plan must be feasible to be confirmed. This is implemented by two statutory requirements.

First, a non-consensual plan may only be confirmed if it "is fair and equitable, with respect to each Class of claims or interest that is impaired under, and has not accepted, the Plan" 11 USC §1191(b). This means that, among other things, "the debtor will be able to make all payments under the plan or there is a reasonable likelihood that the debtor will be able to make all payments under the plan." 11 USC §1191(c)(3)(A).

In addition, to confirm a non-consensual plan, a court must find that "all of the applicable requirements of §1129(a) of this Title, other than paragraphs 8, 10 and 15 of that section, are met with respect to a plan." 11 USC §1191(b). These requirements include 11 USC §1129(a)(11) which states that "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." This "feasibility requirement" means that, "in order to confirm his Chapter 11 plan, the debtor must prove that he will have the ability to make all of the payments required under the plan." *In Re: McInerney*, 487 BR 468, 472 (Bankr. E.D. MI, 2012).

The Debtor has failed to demonstrate any likelihood, let alone a *reasonable* likelihood, that it will be able to make all payments under the plan. The Plan is not feasible. As highlighted in the US Trustee's Motion to Convert Case (Docket #91), the Debtor's filed monthly operating reports are grossly inaccurate, and appear designed to conceal the fact that the Debtor is losing money at an alarming rate (nearly $100,000.00 loss in August-September 2023), without adequate explanation for the dissipation of its assets, including $80,000.00 in supposedly collected accounts receivable.

Feasibility determinations must be "firmly rooted in predictions based on objective fact." *In re Clarkson,* 767 F.2d 417, 420 (8th Cir.1985). The plan must not be "mere wishful thinking . . . [or] based on visionary promises . . . [and] [t]he test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." *Made in Detroit, 299 B.R. at 176 (internal quotation marks omitted).*

Here, the Debtor's Plan provides no explanation whatsoever for the projections attached as Plan Exhibit B. No information is provided as to the source of underlying data, or any assumptions relied upon in formulating such projections. Creditors are left to guess. Unsurprisingly, the projections do not align with the Debtor's performance in this case to date, as evidenced by its monthly operating

reports. The projections are Debtor's wishful thinking, entirely unsupported by fact and unrealistic.

The Plan does not adequately describe how Debtor intends to generate the significant revenues it would require to meet its projections. The Debtor's Plan proposes to reject the vast majority of contracts it had at the time of filing, and (with one exception) there is no indication that the Debtor has successfully negotiated with other customers in assuming the handful of contracts it seeks to retain. Given the complete lack of foundation for its financial projections, the Debtor has not carried its burden to demonstrate a likelihood of successful completion of the Plan. Debtor has no financing in place, no contributions from interest holders, or any other funding mechanism.

Furthermore, as the Debtor is in the home construction industry and subject to the MBTFA, all progress payments it receives must held in trust and must *first* be used to pay laborers and materialmen before the contractor can pay itself. This is not to say that Debtor *cannot* pay itself, but the Debtor must pay labor and materialmen *before* paying for other operating expenses. *Sangal v. Strickfaden (In re Strickfaden)*, 421 B.R. 802, 810, 812 (Bankr. E.D. Mich. 2009) ("He was not entitled to use the funds for other purposes, such as paying his own fees, until all the subcontractors, even those who would do future work, had been paid"). Therefore, any progress payments that are received by Debtor on home construction projects

are *not* property of the Debtor until *after* all subcontractors have been paid. *See also Selby v. Ford Motor Co.*, 590 F.2d 642, 647 (6th Cir. 1979); *B. F. Farnell Co. v. Monahan*, 377 Mich. 552 (1966); *In re Johnson*, 691 F.2d 249, 254 (6th Cir. 1982) ("The Michigan Supreme Court has expressly held that monies paid by an owner to a contractor, and held by him as trustee of the building contract fund, are not the 'property' of the contractor under the Bankruptcy Act. *B.F. Farnell*, supra, at 557").

Thus, Debtor cannot take monies from homeowners as they are received and pay those to other creditors under the plan. The Debtor can only pay creditors out of the profit made on a construction project, *and not until then*. Given that the Debtor seems to rely largely on "progress payments" and the relative dearth of accounts receivable or current contracts, the Debtor is unlikely to have ownership the funds required to make the proposed Plan payments.

## Other Objections

In addition to the feasibility issues, the Plan is otherwise unconfirmable. The Plan fails to discuss the value of potential claims against insiders or third parties, though such causes of action purport to be reserved by the Plan. The Debtor's failure to provide even rudimentary support for its projections, along with its continued lack of candor, demonstrate that the Plan was filed in bad faith in violation of 11 U.S.C. § 1129(a)(3).

## CONCLUSION

The Debtor's Plan is not confirmable, as it fails is not feasible and has not been proposed in good faith.

WHEREFORE, Mohamed Saad, respectfully prays that this Court deny confirmation of the Debtor's Plan of Reorganization and for all other relief as just and proper.

    Respectfully submitted,

    **OSIPOV BIGELMAN, P.C.**

Dated: December 7, 2023    /s/ Anthony J. Miller
ANTHONY J. MILLER (P71505)
Attorney for Mohamed Saad
20700 Civic Center Drive, Suite 420
Southfield, MI 48076
Tel: 248-663-1800/Fax: 248-663-1801
am@osbig.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

In re                                       Case No. 23-46912-tjt
                                            Chapter 11
EXIGENT LANDSCAPING, LLC                    Judge Thomas J. Tucker

Debtor
_____/

# CERTIFICATE OF SERVICE

*Re: Creditor, Mohamed Saad's Objection to Confirmation of Debtor's Sub Chapter V Plan of Reorganization*

    I hereby certify that on December 7, 2023, I electronically filed certificate of service with the Clerk of the Court using the ECF system which will send notification of such filing to the Office of the United States Trustee and all those listed by the court as receiving electronic notices in this case from the court's CM/ECF system.

Respectfully submitted,

**OSIPOV BIGELMAN, P.C.**

Dated: December 7, 2023

/s/ Anthony J. Miller
ANTHONY J. MILLER (P71505)
Attorney for Mohamed Saad
20700 Civic Center Drive, Suite 420
Southfield, MI 48076
Tel: 248-663-1800/Fax: 248-663-1801
am@osbig.com