THIS IS A COPY
The Authoritative Copy of this record is held at cat2.docusign.net

# INSTALLMENT SALE CONTRACT
Contract Number 001-70074443

This Installment Sale Contract (together with each addendum, schedule and rider attached to, or made a part of this agreement and any amendments made from time to time being collectively referred to as this "Contract") is entered into between MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT ("we", "us", or "our") and EXIGENT LANDSCAPING, LLC ("you" or "your").

## 1. PARTIES

**SELLER:**

MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT
24800 NOVI ROAD
NOVI, MI 48375-2414

**BUYER:**

EXIGENT LANDSCAPING, LLC
14450 BOURNEMUTH DRIVE
UTICA, MI 48315-2807

## 2. COST OF UNITS

You may buy the units described below ("Unit" or "Units") for a cash price payable immediately, or you may buy the Units for a contract time price that allows you to purchase the Units now but pay for them in installments over a period of time. The contract time price is more than the cash sale price because it includes charges to compensate us for waiting a period of time before collecting the full purchase price and for taking a risk in waiting such period.

## 3. DESCRIPTION OF THE UNITS

| YEAR/MAKE/MODEL | DESCRIPTION OF UNITS | SERIAL/VIN | DELIVERY DATE/OR RENTAL CONVERSION |
|---|---|---|---|
| 1 New 2022 Caterpillar 279D3 | Compact Track Loader | RB904128 | 04.15.22 |

You acknowledge that the Units described above (including all manufacturer manuals and instructions) were delivered to you and you accepted them on the date indicated. If any of the Units described above will be delivered to you after your execution of this Contract, you agree to sign and deliver to us a separate delivery certificate.

## 4. BUYER'S PROMISE TO PAY; TERMS OF PAYMENT

You agree to pay on the terms shown below:

| CASH SALE PRICE<br>The price you could pay for the Units in cash. | NET TRADE-IN, DOWN PAYMENT, & RENTAL EQUITY<br>The net value of any trade-in plus any down payment plus any rental equity you paid. | TAXES<br>Sales, property, other | FEES<br>Fees and other costs. | AMOUNT FINANCED<br>Cash Price less Down Payment Plus Fees | PAYMENT<br>The amount due each month if your payments are made on their due date. | ANNUAL PERCENTAGE RATE<br>The implicit interest rate on this Contract. |
|---|---|---|---|---|---|---|
| $86,931.81 | $0.00 | $5,215.91 | $595.00 | $92,742.72 | $1,545.71 | 0.00% |

You will pay 60 equal monthly payments beginning 30 days after the Unit delivery date (or a later date determined by us), with payments due on the same day of each month thereafter until the entire balance is paid. Please send payment to CATERPILLAR FINANCIAL SERVICES CORP., P.O. BOX 730681, DALLAS, TX 75373-0681. If we do not receive a payment on the date it is due, you will be charged a late payment charge equal to five percent (5%) of the payment due.

**NOTICES:** (1) DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THE CONTRACT YOU SIGN. (3) UNDER THE LAW YOU MAY HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. (4) IF THIS CONTRACT IS NOT EXECUTED BY YOU AND RETURNED TO US ON OR BEFORE MAY 13, 2022, THIS CONTRACT MAY BE CONSIDERED NULL AND VOID BY US.

## SIGNATURES

By signing this Contract, you certify that you have received and read this Contract, including the following 2 pages titled "Terms and Conditions", which make up part of this Contract.

**SELLER**

MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT

*Barry Hendges*

_____

Dealer Finance Manager

4/21/2022

**BUYER**

EXIGENT LANDSCAPING, LLC

*/s/*

_____

Name: Brandon Heitmann

Title: Member

**TERMS AND CONDITIONS**

5. **Buyer's Unconditional Payment and Performance Obligations** You, by execution of this Contract, agree that your payment and performance obligations under this Contract are absolute and unconditional. Your payment and performance obligations are not subject to cancellation, reduction or setoff for any reason. If you are permitted to fully pay off any or all of the Units before the scheduled expiration of this Contract, or if all amounts due under this Contract otherwise become due and are paid prior to such scheduled expiration (in each case, an "Early Payoff"), you will not be required to pay any interest charges that would have otherwise accrued after such Early Payoff, but you will be charged an administrative fee. Any amounts received in excess of the amount due to us pursuant to the terms of this Contract (including any taxes, fees, and late charges) will be applied to future payments.

6. **Assignment to Caterpillar Financial Services Corporation; Subsequent Assignments** Upon the parties' execution of this Contract, this Contract may be assigned to Caterpillar Financial Services Corporation ("Cat Financial") without notice. Thereafter, Cat Financial may assign, sell or encumber all or any part of this Contract without notice. Upon our assignment to Cat Financial, "us," "we" and "our" will refer to Cat Financial, and Cat Financial will have all the rights and remedies of MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT hereunder and all of your agreements, representations and warranties will be deemed to have been made to Cat Financial with the same force and effect as if it were an original party to this Contract. You agree and acknowledge that MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT is not Cat Financial's agent for any purpose and has no power or authority to amend this Contract. If Cat Financial subsequently assigns, sells or encumbers its interest in this Contract to a third party, "us," "we" and "our" will refer to such third party or any subsequent assignee of such third party (such third-party and any subsequent assignee are each referred to herein as an "assignee"), and assignee will have all the rights and remedies of MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT hereunder and all of your agreements, representations and warranties will be deemed to have been made to such assignee with the same force and effect as if it were an original party to this Contract. **You agree to settle all claims, defenses, setoffs, counterclaims and other disputes of any kind you may have with MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT or the manufacturer of the Units directly with MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT or the manufacturer of the Units, as the case may be. You will not assert or allege or make any such claim, defense, setoff, counterclaim or other dispute against Cat Financial or any assignee or with respect to the payments due Cat Financial or such assignee under this Contract.** If requested, you agree to assist us in the assignment of any of the rights under this Contract and will sign a notice of assignment in a form approved by Cat Financial or any subsequent assignee, as the case may be. You acknowledge that Cat Financial is not related to MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT and Cat Financial has no knowledge or information as to the condition or suitability of the Units for your purposes.

7. **Security Interest; Further Assurances** To secure the payment and performance of your obligations to us under this Contract and to secure all other obligations of every kind and nature that you may owe to us or any of our affiliates now or in the future, you grant to us a continuing first priority security interest in (i) each Unit, including all attachments, accessories and optional features for such Unit (whether or not installed on the Unit) and all substitutions, replacements, additions and accessions of the foregoing, (ii) all of your rights and benefits under each Cat® Customer Value Agreement between you and Caterpillar Financial Aftermarket Solutions Corporation described in the DESCRIPTION OF THE UNITS or an addendum hereto and, in each case, associating to a Unit described in the DESCRIPTION OF THE UNITS by Serial #/VIN# (each a "CVA" and collectively, the "CVAs"), and (iii) the proceeds of all the foregoing. You will, at your expense, do any act and execute, acknowledge, deliver, file, register and record any documents that we deem desirable to protect our security interest in any Unit and in any other collateral and our rights and benefits under this Contract.

8. **Possession, Use and Maintenance** You must not: (a) use, operate, maintain or store a Unit improperly, carelessly, unsafely or in violation of any applicable law or regulation or for a purpose other than in the normal and ordinary course of your business; (b) abandon a Unit; (c) lease a Unit or permit the use of a Unit by anyone other than you, without our prior written consent; (d) sell, assign, transfer or create or allow to exist any lien, claim, security interest or encumbrance on any Unit or your rights and benefits under any CVA, except in our favor; or (e) remove a Unit from the United States. A Unit is and will remain personal property regardless of its use or manner of attachment to realty. We have the right (but not the obligation) to inspect a Unit and its maintenance records, and observe its use and determine its hours of usage. You, at your expense, will maintain each Unit in good operating order, repair and condition and perform maintenance at least as frequently as stated in an applicable operator's guide, service manual, or lubrication and maintenance guide. You must not alter a Unit or affix any accessory or equipment to a Unit if doing so will impair its originally intended function or reduce the Unit's value.

9. **Loss or Damage** You will bear the risk of loss to a Unit. A "Casualty Occurrence" will occur if a Unit is worn out, lost, stolen, destroyed, taken by government action or, in our opinion, irreparably damaged. You will provide us prompt written notice of any Casualty Occurrence. In the event of a Casualty Occurrence, you will pay to us within thirty (30) days of the Casualty Occurrence, the sum of all amounts then due under this Contract with respect to such Unit (including any late charges and fees) and the present value of all unpaid future payments for such Unit. Present values will be determined by discounting the remaining balance owed for such Unit (as we will reasonably determine) at the implicit interest rate of this Contract. Upon making this payment, your obligations related to such Unit will terminate.

10. **Insurance** You, at your expense, must keep each Unit insured with a commercial insurance policy for our benefit. This insurance must include physical damage insurance that will protect each Unit against all risks for its full insurable value. You must also maintain commercial general liability insurance in an amount reasonably acceptable to us. All insurance must be in a form and with companies approved by us. The physical damage insurance will specify you as named insured and us as loss payee, and the general liability policy will specify you as named insured. All insurance will be primary, without the right of contribution from any insurance carried by us. You must promptly notify us of any occurrence that may become the basis of a claim. You must also provide us with all requested pertinent data. Upon demand, you must promptly deliver to us evidence of insurance coverage. Notwithstanding anything to the contrary, you acknowledge and authorize us to receive the return of any unearned premiums, including without limitation any refunds resulting from cancellation, nonrenewal, voidance or adjustment of your insurance policy financed with us, if the policy is underwritten by Caterpillar Insurance Company or its affiliates. You agree that such unearned premiums are being forwarded on your behalf, credited to you and will be applied by us to any unpaid balances on your account.

11. **Events of Default** Each of the following is an event of default ("**Event of Default**"): (a) you fail to make a payment when due; (b) a representation or warranty made to us in connection with this Contract is incorrect or misleading; (c) you fail to observe or perform a covenant, agreement or warranty and the failure continues for ten (10) days after written notice to you; (d) a default occurs under any other agreement between you or a guarantor of this Contact (each, a "Guarantor") and us or an affiliate of ours; (e) you or a Guarantor cease to do business, die, become insolvent, make an assignment for the benefit of creditors or file a petition or action under a bankruptcy, reorganization, insolvency or moratorium law, or a law for the relief of, or relating to, debtors; (f) the filing of an involuntary petition under a bankruptcy statute against you or a Guarantor, or appointment of a receiver, trustee, custodian or similar official to take possession of your properties or those of a Guarantor, unless the petition or appointment ceases to be in effect within thirty (30) days after filing or appointment; (g) there is a material adverse change in your or a Guarantor's financial condition, business operations or prospects; (h) there is a termination, breach or repudiation of a Guarantor's guaranty; and/or (i) there is a breach in any respect of any covenant or agreement in Section 14 hereof.

12. **Remedies** If an Event of Default occurs, we will have the rights and remedies provided by this Contract. We will also have all rights and remedies provided a secured party under the Uniform Commercial Code and any other law. Among these rights and remedies are to: (a) proceed at law or in equity to enforce specifically your performance or to recover damages; (b) declare this Contract in default, and cancel this Contract or otherwise terminate your right to use any Unit and your other rights, but not your obligations; (c) declare all amounts due or to become due under this Contract immediately due and payable; (d) recover additional damages and expenses suffered by us due to the Event of Default; (e) enforce the security interest granted herein; (f) require you to assemble Units and make them available to us at a place we designate; (g) enter premises where a Unit may be located and take immediate possession thereof and remove (or disable in place) such Unit (and any unattached parts) without notice, liability, or legal process; (h) exercise any rights and receive any benefits under any CVA; (i) cancel any CVA and receive the refund of any portion of the purchase price paid thereunder that we financed but had not yet received from you as of the date of the Event of Default; and (j) if we financed your obligations under an extended warranty agreement such as an Equipment Protection Plan, Extended Service Contract, Extended Warranty, Customer Service Agreement, Total Maintenance and Repair Agreement or similar agreement, we may cancel such agreement on your behalf and receive the refund of the agreement fees that we financed but had not received from you as of the date of the Event of Default. You agree to pay all charges, costs, expenses and reasonable attorney's fees incurred by us in enforcing this Contract. You agree that proceeds received from the sale of any Unit will be applied first to reimburse us for all expenses of collection and enforcement of this Contract, including our reasonable attorneys' fees and legal expenses, and then to obligations owed under this Contract. Any remaining proceeds will then be applied to any other indebtedness or obligations owed by you to us and our affiliates. To the extent you are entitled to a refund from us, you agree we will have the right to offset any obligation that you have with us or our affiliates with such refund. You must promptly pay any deficiency to us. The remedies provided to us are cumulative and in addition to all other remedies at law or in equity. If you fail to perform any of your obligations under this Contract, we may (but need not) thereafter perform such obligation. You must pay the resulting expenses incurred by us on demand.

13. **Buyer's Representations** You represent and warrant to us that (a) this Contract constitutes your valid obligation, legally binding upon you and enforceable according to its terms; (b) you will use each Unit for business purposes only and not for personal, family or household use; (c) you must promptly pay all taxes, assessments, fees and other charges arising from this Contract or the Units, except for our income taxes; (d) you must provide all financial information and reporting that we may reasonably require; (e) all credit, financial and other information submitted to us in connection with this Contract is and will be true, correct and complete; (f) you will not change your name, principal place of business or primary residence and, if a business entity, state of formation or form of business organization (including any merger, consolidation, reincorporation or restructure) without prior written notice to

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

us; (g) you must not assign this Contract or any right or obligation under it without our prior written consent; (h) we may share any of your information provided by you or gathered by us with Cat Financial and any affiliate of Cat Financial that has or may extend credit to you and with any assignee (as such term is defined in Section 6) and (j) you will defend at your own expense any action, proceeding or claim affecting or arising from the Units. In the event any Unit is equipped with a Unit monitoring system such as Cat® Product Link, you agree not to remove, disable or impair such Unit monitoring system, and to permit Caterpillar Inc. and all of its subsidiaries and affiliates, (collectively "Caterpillar"), and Caterpillar dealers to access data concerning such Unit, its condition and its operation transmitted from the monitoring system. The information may be used (i) to administer, implement and enforce the terms and conditions of this Contract, (ii) recover the Unit if necessary, and (iii) to improve Caterpillar's products and services. You agree that information transmitted may include the serial number, VIN, Unit location, and operational and other data, including but not limited to fault codes, emissions data, fuel usage, service meter hours, software and hardware version numbers, and installed attachments.

You agree that messages regarding active transactions you have with us may be delivered by telephone call (whether prerecorded voice or autodialed or not) or sent via text message or SMS (whether autodialed / texted or not), or message sent through a social media or similar platform, to any landline or mobile phone number submitted in connection with the credit application process or subsequently as a business contact number for you. You agree to update your business contact information, including any mobile number submitted as a contact, with us if it changes during the duration of this Contract. You understand and agree that collections messaging may occur, even if you have registered certain preferences regarding a mobile number that is also a business contact number.

Caterpillar publishes its Data Governance Statement ("Data Governance Statement") covering matters relating to data collected by Caterpillar, including geolocation and operational data relating to equipment or owners or operators of the Units. In addition, Caterpillar's Global Data Privacy Statement ("Privacy Statement") describes how Caterpillar collects, processes and shares information that relates to an identified or identifiable individual ("Personal Information") and rights that individuals might have under applicable data privacy laws. By entering into this Contract, Buyer agrees: (1) that it has received and reviewed the Data Governance Statement online at https://www.caterpillar.com/datagovernance and the Privacy Statement online at https://www.caterpillar.com/dataprivacy; (2) to the collection, use, disclosure and sharing of information, including personal information, as set forth in the Data Governance Statement and the Privacy Statement; and (3) that it will provide any individuals access to or a copy of the Data Governance Statement and the Privacy Statement before providing the individual's information to us or our affiliates. Buyer (or individuals representing Buyer) may also authorize and/or consent to the collection, use, disclosure and sharing of information and/or Personal Information in other agreements or documents with us, our affiliates or Caterpillar dealers, and nothing contained herein shall interfere with or affect such agreements or documents in any way.

14. **Sanctions** None of (a) you, or any of your respective directors, officers or employees, subsidiaries, or any Guarantor, or any beneficial owner of you or any Guarantor, or any person holding a controlling interest in you or any Guarantor (each, a "Relevant Person"), or (b) to your knowledge, having made reasonable enquiries, any agent of yours that will act in any capacity in connection with or benefit from this Contract (including any addendum hereto) and the financing hereunder, is currently or at any time a Sanctioned Person.

"Sanctioned Person" means, at any time, (I) a person listed in any sanctions-related list of designated persons maintained by the U.S. Department of the Treasury, the U.S. Department of Commerce, the U.S. Department of State, or by the United Nations Security Council, the European Union, or any EU member state, or (II) any person owned or controlled by any such person or persons in aggregate.

No Unit or other proceeds received under the terms of this Contract will be used by you or any Guarantor, or any other Relevant Person, or to your knowledge, having made reasonable enquiries, by any of your agents, sublessees, or other users of the Unit, in violation of, or which shall cause us or our affiliates to be in violation of, any applicable laws, rules, or regulations relating to (A) bribery or corruption, (B) anti-money laundering, (C) terrorism, (D) economic or financial sanctions, or (E) trade embargoes.

15. **Successors and Assigns; Counterparts** This Contract is for the benefit of, and is binding upon, your and our respective permitted successors and assigns. Although multiple counterparts of this document may be signed, only the counterpart accepted, acknowledged and certified by us on the signature page as the original will constitute original chattel paper. A photocopy or facsimile of this Contract will be legally admissible under the "best evidence rule." A signed copy of this Contract and any related document sent electronically will be treated as an original document and will be admissible as evidence thereof, and all signatures thereon will be binding as if manual signatures were personally delivered.

16. **Effect of Waiver; Entire Agreement; Notices; Applicable Law** A delay or omission by us in exercising any right or remedy will not impair such right or remedy. A delay or omission by us will not be construed as a waiver of any Event of Default. Any waiver or consent by us must be in writing. This Contract, each attachment and schedule referencing this Contract, and any riders or addenda completely states our and your rights and supersedes all prior agreements with respect to a Unit. All notices must be in writing, addressed to the other party at the address stated on the front or at such other address as may be furnished in writing. This Contract is governed by and construed under the laws of the State of Tennessee, without giving effect to the conflict-of-laws principles. You consent to the jurisdiction of any state or federal court located within the State of Tennessee. **The parties waive the right to trial by jury in any action arising out of or related to this Contract, the obligations or the Units.**

17. **Modification of Contract; Miscellaneous** No waiver, modification or change in this Contract will bind us unless provided by us in writing. Oral agreements are not binding. You agree that we may correct patent errors herein and fill in blanks including serial numbers, VIN numbers, and dates. Headings in this Contract are inserted for convenience only. Headings do not affect the meaning or interpretation of this Contract. If a provision of this Contract is invalid under any law, it will be deemed omitted. Any such deemed omission will not invalidate the remaining provisions. All your obligations under this Contract survive the expiration or termination of this Contract if necessary to give full effect to the terms of this Contract. Time is of the essence under this Contract.

**Until this Contract (or identical counterpart thereof) has been signed by our duly authorized representative, it will constitute an offer by you to enter into this Contract with us on the terms stated herein.**

THIS IS A COPY
The Authoritative Copy of this record is held at cat2.docusign.net

**INSTALLMENT SALE CONTRACT**
Contract Number 001-70074488

This Installment Sale Contract (together with each addendum, schedule and rider attached to, or made a part of this agreement and any amendments made from time to time being collectively referred to as this "Contract") is entered into between MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT ("we", "us", or "our") and EXIGENT LANDSCAPING, LLC ("you" or "your").

### 1. PARTIES

**SELLER:**
MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT
24800 NOVI ROAD
NOVI, MI 48375-2414

**BUYER:**
EXIGENT LANDSCAPING, LLC
14450 BOURNEMUTH DRIVE
UTICA, MI 48315-2807

### 2. COST OF UNITS

You may buy the units described below ("Unit" or "Units") for a cash price payable immediately, or you may buy the Units for a contract time price that allows you to purchase the Units now but pay for them in installments over a period of time. The contract time price is more than the cash sale price because it includes charges to compensate us for waiting a period of time before collecting the full purchase price and for taking a risk in waiting such period.

### 3. DESCRIPTION OF THE UNITS

| YEAR/MAKE/MODEL | DESCRIPTION OF UNITS | SERIAL/VIN | DELIVERY DATE/OR RENTAL CONVERSION |
|---|---|---|---|
| 1 New 2022 Caterpillar 299D3 | Compact Track Loader | DY905096 | 04.15.22 |

You acknowledge that the Units described above (including all manufacturer manuals and instructions) were delivered to you and you accepted them on the date indicated. If any of the Units described above will be delivered to you after your execution of this Contract, you agree to sign and deliver to us a separate delivery certificate.

### 4. BUYER'S PROMISE TO PAY; TERMS OF PAYMENT

You agree to pay on the terms shown below:

| CASH SALE PRICE The price you could pay for the Units in cash. | NET TRADE-IN, DOWN PAYMENT, & RENTAL EQUITY The net value of any trade-in plus any down payment plus any rental equity you paid. | TAXES Sales, property, other | FEES Fees and other costs. | AMOUNT FINANCED Cash Price less Down Payment Plus Fees | PAYMENT The amount due each month if your payments are made on their due date. | ANNUAL PERCENTAGE RATE The implicit interest rate on this Contract. |
|---|---|---|---|---|---|---|
| $94,444.13 | $0.00 | $5,666.65 | $595.00 | $100,705.78 | $1,678.43 | 0.00% |

You will pay 60 equal monthly payments beginning 30 days after the Unit delivery date (or a later date determined by us), with payments due on the same day of each month thereafter until the entire balance is paid. Please send payment to CATERPILLAR FINANCIAL SERVICES CORP., P.O. BOX 730681, DALLAS, TX 75373-0681. If we do not receive a payment on the date it is due, you will be charged a late payment charge equal to five percent (5%) of the payment due.

**NOTICES:** (1) DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THE CONTRACT YOU SIGN. (3) UNDER THE LAW YOU MAY HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. (4) IF THIS CONTRACT IS NOT EXECUTED BY YOU AND RETURNED TO US ON OR BEFORE MAY 13, 2022, THIS CONTRACT MAY BE CONSIDERED NULL AND VOID BY US.

### SIGNATURES

By signing this Contract, you certify that you have received and read this Contract, including the following 2 pages titled "Terms and Conditions", which make up part of this Contract.

**SELLER**
MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT

*Barry Hendges*
_____
Dealer Finance Manager
4/29/2022

**BUYER**
EXIGENT LANDSCAPING, LLC

_____

Name: Brandon Heitmann
Title: Member

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

**TERMS AND CONDITIONS**

5. **Buyer's Unconditional Payment and Performance Obligations**  You, by execution of this Contract, agree that your payment and performance obligations under this Contract are absolute and unconditional. Your payment and performance obligations are not subject to cancellation, reduction or setoff for any reason. If you are permitted to fully pay off any or all of the Units before the scheduled expiration of this Contract, or if all amounts due under this Contract otherwise become due and are paid prior to such scheduled expiration (in each case, an "Early Payoff"), you will not be required to pay any interest charges that would have otherwise accrued after such Early Payoff, but you will be charged an administrative fee.  Any amounts received in excess of the amount due to us pursuant to the terms of this Contract (including any taxes, fees, and late charges) will be applied to future payments.

6. **Assignment to Caterpillar Financial Services Corporation; Subsequent Assignments**  Upon the parties' execution of this Contract, this Contract may be assigned to Caterpillar Financial Services Corporation ("Cat Financial") without notice. Thereafter, Cat Financial may assign, sell or encumber all or any part of this Contract without notice.  Upon our assignment to Cat Financial, "us," "we" and "our" will refer to Cat Financial, and Cat Financial will have all the rights and remedies of MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT hereunder and all of your agreements, representations and warranties will be deemed to have been made to Cat Financial with the same force and effect as if it were an original party to this Contract. You agree and acknowledge that MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT is not Cat Financial's agent for any purpose and has no power or authority to amend this Contract. If Cat Financial subsequently assigns, sells or encumbers its interest in this Contract to a third party, "us," "we" and "our" will refer to such third party or any subsequent assignee of such third party (such third-party and any subsequent assignee are each referred to herein as an "assignee"), and assignee will have all the rights and remedies of MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT hereunder and all of your agreements, representations and warranties will be deemed to have been made to such assignee with the same force and effect as if it were an original party to this Contract. **You agree to settle all claims, defenses, setoffs, counterclaims and other disputes of any kind you may have with** MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT **or the manufacturer of the Units directly with** MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT **or the manufacturer of the Units, as the case may be. You will not assert or allege or make any such claim, defense, setoff, counterclaim or other dispute against Cat Financial or any assignee or with respect to the payments due Cat Financial or such assignee under this Contract.** If requested, you agree to assist us in the assignment of any of the rights under this Contract and will sign a notice of assignment in a form approved by Cat Financial or any subsequent assignee, as the case may be. You acknowledge that Cat Financial is not related to MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT and Cat Financial has no knowledge or information as to the condition or suitability of the Units for your purposes.

7. **Security Interest; Further Assurances**  To secure the payment and performance of your obligations to us under this Contract and to secure all other obligations of every kind and nature that you may owe to us or any of our affiliates now or in the future, you grant to us a continuing first priority security interest in (i) each Unit, including all attachments, accessories and optional features for such Unit (whether or not installed on the Unit) and all substitutions, replacements, additions and accessions of the foregoing, (ii) all of your rights and benefits under each Cat® Customer Value Agreement between you and Caterpillar Financial Aftermarket Solutions Corporation described in the DESCRIPTION OF THE UNITS or an addendum hereto and, in each case, associating to a Unit described in the DESCRIPTION OF THE UNITS by Serial #/VIN# (each a "CVA" and collectively, the "CVAs"), and (iii) the proceeds of all the foregoing. You will, at your expense, do any act and execute, acknowledge, deliver, file, register and record any documents that we deem desirable to protect our security interest in any Unit and in any other collateral and our rights and benefits under this Contract.

8. **Possession, Use and Maintenance**  You must not: (a) use, operate, maintain or store a Unit improperly, carelessly, unsafely or in violation of any applicable law or regulation or for a purpose other than in the normal and ordinary course of your business; (b) abandon a Unit; (c) lease a Unit or permit the use of a Unit by anyone other than you, without our prior written consent; (d) sell, assign, transfer or create or allow to exist any lien, claim, security interest or encumbrance on any Unit or your rights and benefits under any CVA, except in our favor; or (e) remove a Unit from the United States. A Unit is and will remain personal property regardless of its use or manner of attachment to realty. We have the right (but not the obligation) to inspect a Unit and its maintenance records, and observe its use and determine its hours of usage. You, at your expense, will maintain each Unit in good operating order, repair and condition and perform maintenance at least as frequently as stated in an applicable operator's guide, service manual, or lubrication and maintenance guide. You must not alter a Unit or affix any accessory or equipment to a Unit if doing so will impair its originally intended function or reduce the Unit's value.

9. **Loss or Damage**  You will bear the risk of loss to a Unit. A "Casualty Occurrence" will occur if a Unit is worn out, lost, stolen, destroyed, taken by government action or, in our opinion, irreparably damaged. You will provide us prompt written notice of any Casualty Occurrence. In the event of a Casualty Occurrence, you will pay to us within thirty (30) days of the Casualty Occurrence, the sum of all amounts then due under this Contract with respect to such Unit (including any late charges and fees) and the present value of all unpaid future payments for such Unit. Present values will be determined by discounting the remaining balance owed for such Unit (as we will reasonably determine) at the implicit interest rate of this Contract. Upon making this payment, your obligations related to such Unit will terminate.

10. **Insurance**  You, at your expense, must keep each Unit insured with a commercial insurance policy for our benefit.  This insurance must include physical damage insurance that will protect each Unit against all risks for its full insurable value. You must also maintain commercial general liability insurance in an amount reasonably acceptable to us. All insurance must be in a form and with companies approved by us. The physical damage insurance will specify you as named insured and us as loss payee, and the general liability policy will specify you as named insured. All insurance will be primary, without the right of contribution from any insurance carried by us. You must promptly notify us of any occurrence that may become the basis of a claim. You must also provide us with all requested pertinent data. Upon demand, you must promptly deliver to us evidence of insurance coverage. Notwithstanding anything to the contrary, you acknowledge and authorize us to receive the return of any unearned premiums, including without limitation any refunds resulting from cancellation, nonrenewal, voidance or adjustment of your insurance policy financed with us, if the policy is underwritten by Caterpillar Insurance Company or its affiliates. You agree that such unearned premiums are being forwarded on your behalf, credited to you and will be applied by us to any unpaid balances on your account.

11. **Events of Default**  Each of the following is an event of default ("**Event of Default**"): (a) you fail to make a payment when due; (b) a representation or warranty made to us in connection with this Contract is incorrect or misleading; (c) you fail to observe or perform a covenant, agreement or warranty and the failure continues for ten (10) days after written notice to you; (d) a default occurs under any other agreement between you or a guarantor of this Contact (each, a "Guarantor") and us or an affiliate of ours; (e) you or a Guarantor cease to do business, die, become insolvent, make an assignment for the benefit of creditors or file a petition or action under a bankruptcy, reorganization, insolvency or moratorium law, or a law for the relief of, or relating to, debtors; (f) the filing of an involuntary petition under a bankruptcy statute against you or a Guarantor, or appointment of a receiver, trustee, custodian or similar official to take possession of your properties or those of a Guarantor, unless the petition or appointment ceases to be in effect within thirty (30) days after filing or appointment; (g) there is a material adverse change in your or a Guarantor's financial condition, business operations or prospects; (h) there is a termination, breach or repudiation of a Guarantor's guaranty; and/or (i) there is a breach in any respect of any covenant or agreement in Section 14 hereof.

12. **Remedies**  If an Event of Default occurs, we will have the rights and remedies provided by this Contract. We will also have all rights and remedies provided a secured party under the Uniform Commercial Code and any other law. Among these rights and remedies are to: (a) proceed at law or in equity to enforce specifically your performance or to recover damages; (b) declare this Contract in default, and cancel this Contract or otherwise terminate your right to use any Unit and your other rights, but not your obligations; (c) declare all amounts due or to become due under this Contract immediately due and payable; (d) recover additional damages and expenses suffered by us due to the Event of Default; (e) enforce the security interest granted herein; (f) require you to assemble Units and make them available to us at a place we designate; (g) enter premises where a Unit may be located and take immediate possession thereof and remove (or disable in place) such Unit (and any unattached parts) without notice, liability, or legal process; (h) exercise any rights and receive any benefits under any CVA; (i) cancel any CVA and receive the refund of any portion of the purchase price paid thereunder that we financed but had not yet received from you as of the date of the Event of Default; and (j) if we financed your obligations under an extended warranty agreement such as an Equipment Protection Plan, Extended Service Contract, Extended Warranty, Customer Service Agreement, Total Maintenance and Repair Agreement or similar agreement, we may cancel such agreement on your behalf and receive the refund of the agreement fees that we financed but had not received from you as of the date of the Event of Default. You agree to pay all charges, costs, expenses and reasonable attorney's fees incurred by us in enforcing this Contract. You agree that proceeds received from the sale of any Unit will be applied first to reimburse us for all expenses of collection and enforcement of this Contract, including our reasonable attorneys' fees and legal expenses, and then to obligations owed under this Contract. Any remaining proceeds will then be applied to any other indebtedness or obligations owed by you to us and our affiliates. To the extent you are entitled to a refund from us, you agree we will have the right to offset any obligation that you have with us or our affiliates with such refund. You must promptly pay any deficiency to us. The remedies provided to us are cumulative and in addition to all other remedies at law or in equity. If you fail to perform any of your obligations under this Contract, we may (but need not) thereafter perform such obligation. You must pay the resulting expenses incurred by us on demand.

13. **Buyer's Representations**  You represent and warrant to us that (a) this Contract constitutes your valid obligation, legally binding upon you and enforceable according to its terms; (b) you will use each Unit for business purposes only and not for personal, family or household use; (c) you must promptly pay all taxes, assessments, fees and other charges arising from this Contract or the Units, except for our income taxes; (d) you must provide all financial information and reporting that we may reasonably require; (e) all credit, financial and other information submitted to us in connection with this Contract is and will be true, correct and complete; (f) you will not change your name, principal place of business or primary residence and, if a business entity, state of formation or form of business organization (including any merger, consolidation, reincorporation or restructure) without prior written notice to

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

us; (g) you must not assign this Contract or any right or obligation under it without our prior written consent; (h) we may share any of your information provided by you or gathered by us with Cat Financial and any affiliate of Cat Financial that has or may extend credit to you and with any assignee (as such term is defined in Section 6) and (j) you will defend at your own expense any action, proceeding or claim affecting or arising from the Units. In the event any Unit is equipped with a Unit monitoring system such as Cat® Product Link, you agree not to remove, disable or impair such Unit monitoring system, and to permit Caterpillar Inc. and all of its subsidiaries and affiliates, (collectively "Caterpillar"), and Caterpillar dealers to access data concerning such Unit, its condition and its operation transmitted from the monitoring system. The information may be used (i) to administer, implement and enforce the terms and conditions of this Contract, (ii) recover the Unit if necessary, and (iii) to improve Caterpillar's products and services. You agree that information transmitted may include the serial number, VIN, Unit location, and operational and other data, including but not limited to fault codes, emissions data, fuel usage, service meter hours, software and hardware version numbers, and installed attachments.

You agree that messages regarding active transactions you have with us may be delivered by telephone call (whether prerecorded voice or autodialed or not) or sent via text message or SMS (whether autodialed / texted or not), or message sent through a social media or similar platform, to any landline or mobile phone number submitted in connection with the credit application process or subsequently as a business contact number for you. You agree to update your business contact information, including any mobile number submitted as a contact, with us if it changes during the duration of this Contract. You understand and agree that collections messaging may occur, even if you have registered certain preferences regarding a mobile number that is also a business contact number.

Caterpillar publishes its Data Governance Statement ("Data Governance Statement") covering matters relating to data collected by Caterpillar, including geolocation and operational data relating to equipment or owners or operators of the Units. In addition, Caterpillar's Global Data Privacy Statement ("Privacy Statement") describes how Caterpillar collects, processes and shares information that relates to an identified or identifiable individual ("Personal Information") and rights that individuals might have under applicable data privacy laws. By entering into this Contract, Buyer agrees: (1) that it has received and reviewed the Data Governance Statement online at https://www.caterpillar.com/datagovernance and the Privacy Statement online at https://www.caterpillar.com/dataprivacy; (2) to the collection, use, disclosure and sharing of information, including personal information, as set forth in the Data Governance Statement and the Privacy Statement; and (3) that it will provide any individuals access to or a copy of the Data Governance Statement and the Privacy Statement before providing the individual's information to us or our affiliates. Buyer (or individuals representing Buyer) may also authorize and/or consent to the collection, use, disclosure and sharing of information and/or Personal Information in other agreements or documents with us, our affiliates or Caterpillar dealers, and nothing contained herein shall interfere with or affect such agreements or documents in any way.

14. **Sanctions** None of (a) you, or any of your respective directors, officers or employees, subsidiaries, or any Guarantor, or any beneficial owner of you or any Guarantor, or any person holding a controlling interest in you or any Guarantor (each, a "Relevant Person"), or (b) to your knowledge, having made reasonable enquiries, any agent of yours that will act in any capacity in connection with or benefit from this Contract (including any addendum hereto) and the financing hereunder, is currently or at any time a Sanctioned Person.

"Sanctioned Person" means, at any time, (I) a person listed in any sanctions-related list of designated persons maintained by the U.S. Department of the Treasury, the U.S. Department of Commerce, the U.S. Department of State, or by the United Nations Security Council, the European Union, or any EU member state, or (II) any person owned or controlled by any such person or persons in aggregate.

No Unit or other proceeds received under the terms of this Contract will be used by you or any Guarantor, or any other Relevant Person, or to your knowledge, having made reasonable enquiries, by any of your agents, sublessees, or other users of the Unit, in violation of, or which shall cause us or our affiliates to be in violation of, any applicable laws, rules, or regulations relating to (A) bribery or corruption, (B) anti-money laundering, (C) terrorism, (D) economic or financial sanctions, or (E) trade embargoes.

15. **Successors and Assigns; Counterparts** This Contract is for the benefit of, and is binding upon, your and our respective permitted successors and assigns. Although multiple counterparts of this document may be signed, only the counterpart accepted, acknowledged and certified by us on the signature page as the original will constitute original chattel paper. A photocopy or facsimile of this Contract will be legally admissible under the "best evidence rule." A signed copy of this Contract and any related document sent electronically will be treated as an original document and will be admissible as evidence thereof, and all signatures thereon will be binding as if manual signatures were personally delivered.

16. **Effect of Waiver; Entire Agreement; Notices; Applicable Law** A delay or omission by us in exercising any right or remedy will not impair such right or remedy. A delay or omission by us will not be construed as a waiver of any Event of Default. Any waiver or consent by us must be in writing. This Contract, each attachment and schedule referencing this Contract, and any riders or addenda completely states our and your rights and supersedes all prior agreements with respect to a Unit. All notices must be in writing, addressed to the other party at the address stated on the front or at such other address as may be furnished in writing. This Contract is governed by and construed under the laws of the State of Tennessee, without giving effect to the conflict-of-laws principles. You consent to the jurisdiction of any state or federal court located within the State of Tennessee. **The parties waive the right to trial by jury in any action arising out of or related to this Contract, the obligations or the Units.**

17. **Modification of Contract; Miscellaneous** No waiver, modification or change in this Contract will bind us unless provided by us in writing. Oral agreements are not binding. You agree that we may correct patent errors herein and fill in blanks including serial numbers, VIN numbers, and dates. Headings in this Contract are inserted for convenience only. Headings do not affect the meaning or interpretation of this Contract. If a provision of this Contract is invalid under any law, it will be deemed omitted. Any such deemed omission will not invalidate the remaining provisions. All your obligations under this Contract survive the expiration or termination of this Contract if necessary to give full effect to the terms of this Contract. Time is of the essence under this Contract.

**Until this Contract (or identical counterpart thereof) has been signed by our duly authorized representative, it will constitute an offer by you to enter into this Contract with us on the terms stated herein.**

## INSTALLMENT SALE CONTRACT
Contract Number 001-70074490

This Installment Sale Contract (together with each addendum, schedule and rider attached to, or made a part of this agreement and any amendments made from time to time being collectively referred to as this "Contract") is entered into between MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT ("we", "us", or "our") and EXIGENT LANDSCAPING, LLC ("you" or "your").

### 1. PARTIES

**SELLER:**

MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT
24800 NOVI ROAD
NOVI, MI 48375-2414

**BUYER:**

EXIGENT LANDSCAPING, LLC
14450 BOURNEMUTH DRIVE
UTICA, MI 48315-2807

### 2. COST OF UNITS

You may buy the units described below ("Unit" or "Units") for a cash price payable immediately, or you may buy the Units for a contract time price that allows you to purchase the Units now but pay for them in installments over a period of time. The contract time price is more than the cash sale price because it includes charges to compensate us for waiting a period of time before collecting the full purchase price and for taking a risk in waiting such period.

### 3. DESCRIPTION OF THE UNITS

| YEAR/MAKE/MODEL | DESCRIPTION OF UNITS | SERIAL/VIN | DELIVERY DATE/OR RENTAL CONVERSION |
|---|---|---|---|
| 1 New 2022 Caterpillar 279D3 | Compact Track Loader | RB904130 | 05.05.22 |

You acknowledge that the Units described above (including all manufacturer manuals and instructions) were delivered to you and you accepted them on the date indicated. If any of the Units described above will be delivered to you after your execution of this Contract, you agree to sign and deliver to us a separate delivery certificate.

### 4. BUYER'S PROMISE TO PAY; TERMS OF PAYMENT

You agree to pay on the terms shown below:

| CASH SALE PRICE  The price you could pay for the Units in cash. | NET TRADE-IN, DOWN PAYMENT, & RENTAL EQUITY  The net value of any trade-in plus any down payment plus any rental equity you paid. | TAXES  Sales, property, other | FEES  Fees and other costs. | AMOUNT FINANCED  Cash Price less Down Payment Plus Fees | PAYMENT  The amount due each month if your payments are made on their due date. | ANNUAL PERCENTAGE RATE  The implicit interest rate on this Contract. |
|---|---|---|---|---|---|---|
| $86,931.81 | $0.00 | $5,215.91 | $595.00 | $92,742.72 | $1,545.71 | 0.00% |

You will pay 60 equal monthly payments beginning 30 days after the Unit delivery date (or a later date determined by us), with payments due on the same day of each month thereafter until the entire balance is paid. Please send payment to CATERPILLAR FINANCIAL SERVICES CORP., P.O. BOX 730681, DALLAS, TX 75373-0681. If we do not receive a payment on the date it is due, you will be charged a late payment charge equal to five percent (5%) of the payment due.

**NOTICES:** (1) DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THE CONTRACT YOU SIGN. (3) UNDER THE LAW YOU MAY HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. (4) IF THIS CONTRACT IS NOT EXECUTED BY YOU AND RETURNED TO US ON OR BEFORE MAY 13, 2022, THIS CONTRACT MAY BE CONSIDERED NULL AND VOID BY US.

### SIGNATURES

By signing this Contract, you certify that you have received and read this Contract, including the following 2 pages titled "Terms and Conditions", which make up part of this Contract.

| SELLER | BUYER |
|---|---|
| MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT | EXIGENT LANDSCAPING, LLC |
| *Barry Hendges* | *[signature]* |
| _____ | _____ |
| | Name: Brandon Heitmann |
| Dealer Finance Manager | Title: Member |
| 5/6/2022 | |

(Page 2 of 3)

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

**TERMS AND CONDITIONS**

5. **Buyer's Unconditional Payment and Performance Obligations** You, by execution of this Contract, agree that your payment and performance obligations under this Contract are absolute and unconditional. Your payment and performance obligations are not subject to cancellation, reduction or setoff for any reason. If you are permitted to fully pay off any or all of the Units before the scheduled expiration of this Contract, or if all amounts due under this Contract otherwise become due and are paid prior to such scheduled expiration (in each case, an "Early Payoff"), you will not be required to pay any interest charges that would have otherwise accrued after such Early Payoff, but you will be charged an administrative fee. Any amounts received in excess of the amount due to us pursuant to the terms of this Contract (including any taxes, fees, and late charges) will be applied to future payments.

6. **Assignment to Caterpillar Financial Services Corporation; Subsequent Assignments** Upon the parties' execution of this Contract, this Contract may be assigned to Caterpillar Financial Services Corporation ("Cat Financial") without notice. Thereafter, Cat Financial may assign, sell or encumber all or any part of this Contract without notice. Upon our assignment to Cat Financial, "us," "we" and "our" will refer to Cat Financial, and Cat Financial will have all the rights and remedies of MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT hereunder and all of your agreements, representations and warranties will be deemed to have been made to Cat Financial with the same force and effect as if it were an original party to this Contract. You agree and acknowledge that MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT is not Cat Financial's agent for any purpose and has no power or authority to amend this Contract. If Cat Financial subsequently assigns, sells or encumbers its interest in this Contract to a third party, "us," "we" and "our" will refer to such third party or any subsequent assignee of such third party (such third-party and any subsequent assignee are each referred to herein as an "assignee"), and assignee will have all the rights and remedies of MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT hereunder and all of your agreements, representations and warranties will be deemed to have been made to such assignee with the same force and effect as if it were an original party to this Contract. **You agree to settle all claims, defenses, setoffs, counterclaims and other disputes of any kind you may have with** MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT **or the manufacturer of the Units directly with** MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT **or the manufacturer of the Units, as the case may be. You will not assert or allege or make any such claim, defense, setoff, counterclaim or other dispute against Cat Financial or any assignee or with respect to the payments due Cat Financial or such assignee under this Contract.** If requested, you agree to assist us in the assignment of any of the rights under this Contract and will sign a notice of assignment in a form approved by Cat Financial or any subsequent assignee, as the case may be. You acknowledge that Cat Financial is not related to MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT and Cat Financial has no knowledge or information as to the condition or suitability of the Units for your purposes.

7. **Security Interest; Further Assurances** To secure the payment and performance of your obligations to us under this Contract and to secure all other obligations of every kind and nature that you may owe to us or any of our affiliates now or in the future, you grant to us a continuing first priority security interest in (i) each Unit, including all attachments, accessories and optional features for such Unit (whether or not installed on the Unit) and all substitutions, replacements, additions and accessions of the foregoing, (ii) all of your rights and benefits under each Cat® Customer Value Agreement between you and Caterpillar Financial Aftermarket Solutions Corporation described in the DESCRIPTION OF THE UNITS or an addendum hereto and, in each case, associating to a Unit described in the DESCRIPTION OF THE UNITS by Serial #/VIN# (each a "CVA" and collectively, the "CVAs"), and (iii) the proceeds of all the foregoing. You will, at your expense, do any act and execute, acknowledge, deliver, file, register and record any documents that we deem desirable to protect our security interest in any Unit and in any other collateral and our rights and benefits under this Contract.

8. **Possession, Use and Maintenance** You must not: (a) use, operate, maintain or store a Unit improperly, carelessly, unsafely or in violation of any applicable law or regulation or for a purpose other than in the normal and ordinary course of your business; (b) abandon a Unit; (c) lease a Unit or permit the use of a Unit by anyone other than you, without our prior written consent; (d) sell, assign, transfer or create or allow to exist any lien, claim, security interest or encumbrance on any Unit or your rights and benefits under any CVA, except in our favor; or (e) remove a Unit from the United States. A Unit is and will remain personal property regardless of its use or manner of attachment to realty. We have the right (but not the obligation) to inspect a Unit and its maintenance records, and observe its use and determine its hours of usage. You, at your expense, will maintain each Unit in good operating order, repair and condition and perform maintenance at least as frequently as stated in an applicable operator's guide, service manual, or lubrication and maintenance guide. You must not alter a Unit or affix any accessory or equipment to a Unit if doing so will impair its originally intended function or reduce the Unit's value.

9. **Loss or Damage** You will bear the risk of loss to a Unit. A "Casualty Occurrence" will occur if a Unit is worn out, lost, stolen, destroyed, taken by government action or, in our opinion, irreparably damaged. You will provide us prompt written notice of any Casualty Occurrence. In the event of a Casualty Occurrence, you will pay to us within thirty (30) days of the Casualty Occurrence, the sum of all amounts then due under this Contract with respect to such Unit (including any late charges and fees) and the present value of all unpaid future payments for such Unit. Present values will be determined by discounting the remaining balance owed for such Unit (as we will reasonably determine) at the implicit interest rate of this Contract. Upon making this payment, your obligations related to such Unit will terminate.

10. **Insurance** You, at your expense, must keep each Unit insured with a commercial insurance policy for our benefit. This insurance must include physical damage insurance that will protect each Unit against all risks for its full insurable value. You must also maintain commercial general liability insurance in an amount reasonably acceptable to us. All insurance must be in a form and with companies approved by us. The physical damage insurance will specify you as named insured and us as loss payee, and the general liability policy will specify you as named insured. All insurance will be primary, without the right of contribution from any insurance carried by us. You must promptly notify us of any occurrence that may become the basis of a claim. You must also provide us with all requested pertinent data. Upon demand, you must promptly deliver to us evidence of insurance coverage. Notwithstanding anything to the contrary, you acknowledge and authorize us to receive the return of any unearned premiums, including without limitation any refunds resulting from cancellation, nonrenewal, voidance or adjustment of your insurance policy financed with us, if the policy is underwritten by Caterpillar Insurance Company or its affiliates. You agree that such unearned premiums are being forwarded on your behalf, credited to you and will be applied by us to any unpaid balances on your account.

11. **Events of Default** Each of the following is an event of default ("**Event of Default**"): (a) you fail to make a payment when due; (b) a representation or warranty made to us in connection with this Contract is incorrect or misleading; (c) you fail to observe or perform a covenant, agreement or warranty and the failure continues for ten (10) days after written notice to you; (d) a default occurs under any other agreement between you or a guarantor of this Contact (each, a "Guarantor") and us or an affiliate of ours; (e) you or a Guarantor cease to do business, die, become insolvent, make an assignment for the benefit of creditors or file a petition or action under a bankruptcy, reorganization, insolvency or moratorium law, or a law for the relief of, or relating to, debtors; (f) the filing of an involuntary petition under a bankruptcy statute against you or a Guarantor, or appointment of a receiver, trustee, custodian or similar official to take possession of your properties or those of a Guarantor, unless the petition or appointment ceases to be in effect within thirty (30) days after filing or appointment; (g) there is a material adverse change in your or a Guarantor's financial condition, business operations or prospects; (h) there is a termination, breach or repudiation of a Guarantor's guaranty; and/or (i) there is a breach in any respect of any covenant or agreement in Section 14 hereof.

12. **Remedies** If an Event of Default occurs, we will have the rights and remedies provided by this Contract. We will also have all rights and remedies provided a secured party under the Uniform Commercial Code and any other law. Among these rights and remedies are to: (a) proceed at law or in equity to enforce specifically your performance or to recover damages; (b) declare this Contract in default, and direct this Contract or otherwise terminate your right to use any Unit and your other rights, but not your obligations; (c) declare all amounts due or to become due under this Contract immediately due and payable; (d) recover additional damages and expenses suffered by us due to the Event of Default; (e) enforce the security interest granted herein; (f) require you to assemble Units and make them available to us at a place we designate; (g) enter premises where a Unit may be located and take immediate possession thereof and remove (or disable in place) such Unit (and any unattached parts) without notice, liability, or legal process; (h) exercise any rights and receive any benefits under any CVA; (i) cancel any CVA and receive the refund of any portion of the purchase price paid thereunder that we financed but had not yet received from you as of the date of the Event of Default; and (j) if we financed your obligations under an extended warranty agreement such as an Equipment Protection Plan, Extended Service Contract, Extended Warranty, Customer Service Agreement, Total Maintenance and Repair Agreement or similar agreement, we may cancel such agreement on your behalf and receive the refund of the agreement fees that we financed but had not received from you as of the date of the Event of Default. You agree to pay all charges, costs, expenses and reasonable attorney's fees incurred by us in enforcing this Contract. You agree that proceeds received from the sale of any Unit will be applied first to reimburse us for all expenses of collection and enforcement of this Contract, including our reasonable attorneys' fees and legal expenses, and then to obligations owed under this Contract. Any remaining proceeds will then be applied to any other indebtedness or obligations owed by you to us and our affiliates. To the extent you are entitled to a refund from us, you agree we will have the right to offset any obligation that you have with us or our affiliates with such refund. You must promptly pay any deficiency to us. The remedies provided to us are cumulative and in addition to all other remedies at law or in equity. If you fail to perform any of your obligations under this Contract, we may (but need not) thereafter perform such obligation. You must pay the resulting expenses incurred by us on demand.

13. **Buyer's Representations** You represent and warrant to us that (a) this Contract constitutes your valid obligation, legally binding upon you and enforceable according to its terms; (b) you will use each Unit for business purposes only and not for personal, family or household use; (c) you must promptly pay all taxes, assessments, fees and other charges arising from this Contract or the Units, except for our income taxes; (d) you must provide all financial information and reporting that we may reasonably require; (e) all credit, financial and other information submitted to us in connection with this Contract is and will be true, correct and complete; (f) you will not change your name, principal place of business or primary residence and, if a business entity, state of formation or form of business organization (including any merger, consolidation, reincorporation or restructure) without prior written notice to

US INSTALLMENT SALES CONTRACT (NON-CVT)    4582235 09/04/2023 05:44:52 PM Ref. 1339837

us; (g) you must not assign this Contract or any right or obligation under it without our prior written consent; (h) we may share any of your information provided by you or gathered by us with Cat Financial and any affiliate of Cat Financial that has or may extend credit to you and with any assignee (as such term is defined in Section 6) and (j) you will defend at your own expense any action, proceeding or claim affecting or arising from the Units. In the event any Unit is equipped with a Unit monitoring system such as Cat® Product Link, you agree not to remove, disable or impair such Unit monitoring system, and to permit Caterpillar Inc. and all of its subsidiaries and affiliates, (collectively "Caterpillar"), and Caterpillar dealers to access data concerning such Unit, its condition and its operation transmitted from the monitoring system. The information may be used (i) to administer, implement and enforce the terms and conditions of this Contract, (ii) recover the Unit if necessary, and (iii) to improve Caterpillar's products and services. You agree that information transmitted may include the serial number, VIN, Unit location, and operational and other data, including but not limited to fault codes, emissions data, fuel usage, service meter hours, software and hardware version numbers, and installed attachments.

You agree that messages regarding active transactions you have with us may be delivered by telephone call (whether prerecorded voice or autodialed or not) or sent via text message or SMS (whether autodialed / texted or not), or message sent through a social media or similar platform, to any landline or mobile phone number submitted in connection with the credit application process or subsequently as a business contact number for you. You agree to update your business contact information, including any mobile number submitted as a contact, with us if it changes during the duration of this Contract. You understand and agree that collections messaging may occur, even if you have registered certain preferences regarding a mobile number that is also a business contact number.

Caterpillar publishes its Data Governance Statement ("Data Governance Statement") covering matters relating to data collected by Caterpillar, including geolocation and operational data relating to equipment or owners or operators of the Units. In addition, Caterpillar's Global Data Privacy Statement ("Privacy Statement") describes how Caterpillar collects, processes and shares information that relates to an identified or identifiable individual ("Personal Information") and rights that individuals might have under applicable data privacy laws. By entering into this Contract, Buyer agrees: (1) that it has received and reviewed the Data Governance Statement online at https://www.caterpillar.com/datagovernance and the Privacy Statement online at https://www.caterpillar.com/dataprivacy; (2) to the collection, use, disclosure and sharing of information, including personal information, as set forth in the Data Governance Statement and the Privacy Statement; and (3) that it will provide any individuals access to or a copy of the Data Governance Statement and the Privacy Statement before providing the individual's information to us or our affiliates. Buyer (or individuals representing Buyer) may also authorize and/or consent to the collection, use, disclosure and sharing of information and/or Personal Information in other agreements or documents with us, our affiliates or Caterpillar dealers, and nothing contained herein shall interfere with or affect such agreements or documents in any way.

14. **Sanctions** None of (a) you, or any of your respective directors, officers or employees, subsidiaries, or any Guarantor, or any beneficial owner of you or any Guarantor, or any person holding a controlling interest in you or any Guarantor (each, a "Relevant Person"), or (b) to your knowledge, having made reasonable enquiries, any agent of yours that will act in any capacity in connection with or benefit from this Contract (including any addendum hereto) and the financing hereunder, is currently or at any time a Sanctioned Person.

"Sanctioned Person" means, at any time, (I) a person listed in any sanctions-related list of designated persons maintained by the U.S. Department of the Treasury, the U.S. Department of Commerce, the U.S. Department of State, or by the United Nations Security Council, the European Union, or any EU member state, or (II) any person owned or controlled by any such person or persons in aggregate.

No Unit or other proceeds received under the terms of this Contract will be used by you or any Guarantor, or any other Relevant Person, or to your knowledge, having made reasonable enquiries, by any of your agents, sublessees, or other users of the Unit, in violation of, or which shall cause us or our affiliates to be in violation of, any applicable laws, rules, or regulations relating to (A) bribery or corruption, (B) anti-money laundering, (C) terrorism, (D) economic or financial sanctions, or (E) trade embargoes.

15. **Successors and Assigns; Counterparts** This Contract is for the benefit of, and is binding upon, your and our respective permitted successors and assigns. Although multiple counterparts of this document may be signed, only the counterpart accepted, acknowledged and certified by us on the signature page as the original will constitute original chattel paper. A photocopy or facsimile of this Contract will be legally admissible under the "best evidence rule." A signed copy of this Contract and any related document sent electronically will be treated as an original document and will be admissible as evidence thereof, and all signatures thereon will be binding as if manual signatures were personally delivered.

16. **Effect of Waiver; Entire Agreement; Notices; Applicable Law** A delay or omission by us in exercising any right or remedy will not impair such right or remedy. A delay or omission by us will not be construed as a waiver of any Event of Default. Any waiver or consent by us must be in writing. This Contract, each attachment and schedule referencing this Contract, and any riders or addenda completely states our and your rights and supersedes all prior agreements with respect to a Unit. All notices must be in writing, addressed to the other party at the address stated on the front or at such other address as may be furnished in writing. This Contract is governed by and construed under the laws of the State of Tennessee, without giving effect to the conflict-of-laws principles. You consent to the jurisdiction of any state or federal court located within the State of Tennessee. **The parties waive the right to trial by jury in any action arising out of or related to this Contract, the obligations or the Units.**

17. **Modification of Contract; Miscellaneous** No waiver, modification or change in this Contract will bind us unless provided by us in writing. Oral agreements are not binding. You agree that we may correct patent errors herein and fill in blanks including serial numbers, VIN numbers, and dates. Headings in this Contract are inserted for convenience only. Headings do not affect the meaning or interpretation of this Contract. If a provision of this Contract is invalid under any law, it will be deemed omitted. Any such deemed omission will not invalidate the remaining provisions. All your obligations under this Contract survive the expiration or termination of this Contract if necessary to give full effect to the terms of this Contract. Time is of the essence under this Contract.

**Until this Contract (or identical counterpart thereof) has been signed by our duly authorized representative, it will constitute an offer by you to enter into this Contract with us on the terms stated herein.**

**THIS IS A COPY**
The Authoritative Copy of this record is held at ca2.docusign.net

CAT Financial

# INSTALLMENT SALE CONTRACT
Contract Number 001-70074491

This Installment Sale Contract (together with each addendum, schedule and rider attached to, or made a part of this agreement and any amendments made from time to time being collectively referred to as this "Contract") is entered into between MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT ("we", "us", or "our") and EXIGENT LANDSCAPING, LLC ("you" or "your").

## 1. PARTIES

**SELLER:**

MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT
24800 NOVI ROAD
NOVI, MI 48375-2414

**BUYER:**

EXIGENT LANDSCAPING, LLC
14450 BOURNEMUTH DRIVE
UTICA, MI 48315-2807

## 2. COST OF UNITS

You may buy the units described below ("Unit" or "Units") for a cash price payable immediately, or you may buy the Units for a contract time price that allows you to purchase the Units now but pay for them in installments over a period of time. The contract time price is more than the cash sale price because it includes charges to compensate us for waiting a period of time before collecting the full purchase price and for taking a risk in waiting such period.

## 3. DESCRIPTION OF THE UNITS

| YEAR/MAKE/MODEL | DESCRIPTION OF UNITS | SERIAL/VIN | DELIVERY DATE/OR RENTAL CONVERSION |
|---|---|---|---|
| 1 New 2022 Caterpillar 279D3 | Compact Track Loader | RB904190 | 05.19.22 |

You acknowledge that the Units described above (including all manufacturer manuals and instructions) were delivered to you and you accepted them on the date indicated. If any of the Units described above will be delivered to you after your execution of this Contract, you agree to sign and deliver to us a separate delivery certificate.

## 4. BUYER'S PROMISE TO PAY; TERMS OF PAYMENT

You agree to pay on the terms shown below:

| CASH SALE PRICE<br>The price you could pay for the Units in cash. | NET TRADE-IN, DOWN PAYMENT, & RENTAL EQUITY<br>The net value of any trade-in plus any down payment plus any rental equity you paid. | TAXES<br>Sales, property, other | FEES<br>Fees and other costs. | AMOUNT FINANCED<br>Cash Price less Down Payment Plus Fees | PAYMENT<br>The amount due each month if your payments are made on their due date. | ANNUAL PERCENTAGE RATE<br>The implicit interest rate on this Contract. |
|---|---|---|---|---|---|---|
| $86,931.81 | $0.00 | $5,215.91 | $595.00 | $92,742.72 | $1,545.73 | 0.00% |

You will pay 60 equal monthly payments beginning 30 days after the Unit delivery date (or a later date determined by us), with payments due on the same day of each month thereafter until the entire balance is paid. Please send payment to CATERPILLAR FINANCIAL SERVICES CORP., P.O. BOX 730681, DALLAS, TX 75373-0681. If we do not receive a payment on the date it is due, you will be charged a late payment charge equal to five percent (5%) of the payment due.

**NOTICES:** (1) DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THE CONTRACT YOU SIGN. (3) UNDER THE LAW YOU MAY HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. (4) IF THIS CONTRACT IS NOT EXECUTED BY YOU AND RETURNED TO US ON OR BEFORE MAY 13, 2022, THIS CONTRACT MAY BE CONSIDERED NULL AND VOID BY US.

## SIGNATURES

By signing this Contract, you certify that you have received and read this Contract, including the following 2 pages titled "Terms and Conditions", which make up part of this Contract.

**SELLER**

MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT

*Jacob Myers*

_____

Finance Representative

5/19/2022

**BUYER**

EXIGENT LANDSCAPING, LLC

*[signature]*

_____

Name: Brandon Heitmann

Title: Member

**TERMS AND CONDITIONS**

5. **Buyer's Unconditional Payment and Performance Obligations** You, by execution of this Contract, agree that your payment and performance obligations under this Contract are absolute and unconditional. Your payment and performance obligations are not subject to cancellation, reduction or setoff for any reason. If you are permitted to fully pay off any or all of the Units before the scheduled expiration of this Contract, or if all amounts due under this Contract otherwise become due and are paid prior to such scheduled expiration (in each case, an "Early Payoff"), you will not be required to pay any interest charges that would have otherwise accrued after such Early Payoff, but you will be charged an administrative fee. Any amounts received in excess of the amount due to us pursuant to the terms of this Contract (including any taxes, fees, and late charges) will be applied to future payments.

6. **Assignment to Caterpillar Financial Services Corporation; Subsequent Assignments** Upon the parties' execution of this Contract, this Contract may be assigned to Caterpillar Financial Services Corporation ("Cat Financial") without notice. Thereafter, Cat Financial may assign, sell or encumber all or any part of this Contract without notice. Upon our assignment to Cat Financial, "us," "we" and "our" will refer to Cat Financial, and Cat Financial will have all the rights and remedies of MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT hereunder and all of your agreements, representations and warranties will be deemed to have been made to Cat Financial with the same force and effect as if it were an original party to this Contract. You agree and acknowledge that MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT is not Cat Financial's agent for any purpose and has no power or authority to amend this Contract. If Cat Financial subsequently assigns, sells or encumbers its interest in this Contract to a third party, "us," "we" and "our" will refer to such third party or any subsequent assignee of such third party (such third-party and any subsequent assignee are each referred to herein as an "assignee"), and assignee will have all the rights and remedies of MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT hereunder and all of your agreements, representations and warranties will be deemed to have been made to such assignee with the same force and effect as if it were an original party to this Contract. **You agree to settle all claims, defenses, setoffs, counterclaims and other disputes of any kind you may have with** MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT **or the manufacturer of the Units directly with** MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT **or the manufacturer of the Units, as the case may be. You will not assert or allege or make any such claim, defense, setoff, counterclaim or other dispute against Cat Financial or any assignee or with respect to the payments due Cat Financial or such assignee under this Contract.** If requested, you agree to assist us in the assignment of any of the rights under this Contract and will sign a notice of assignment in a form approved by Cat Financial or any subsequent assignee, as the case may be. You acknowledge that Cat Financial is not related to MACALLISTER MACHINERY CO., INC. DBA MICHIGAN CAT and Cat Financial has no knowledge or information as to the condition or suitability of the Units for your purposes.

7. **Security Interest; Further Assurances** To secure the payment and performance of your obligations to us under this Contract and to secure all other obligations of every kind and nature that you may owe to us or any of our affiliates now or in the future, you grant to us a continuing first priority security interest in (i) each Unit, including all attachments, accessories and optional features for such Unit (whether or not installed on the Unit) and all substitutions, replacements, additions and accessions of the foregoing, (ii) all of your rights and benefits under each Cat® Customer Value Agreement between you and Caterpillar Financial Aftermarket Solutions Corporation described in the DESCRIPTION OF THE UNITS or an addendum hereto and, in each case, associating to a Unit described in the DESCRIPTION OF THE UNITS by Serial #/VIN# (each a "CVA" and collectively, the "CVAs"), and (iii) the proceeds of all the foregoing. You will, at your expense, do any act and execute, acknowledge, deliver, file, register and record any documents that we deem desirable to protect our security interest in any Unit and in any other collateral and our rights and benefits under this Contract.

8. **Possession, Use and Maintenance** You must not: (a) use, operate, maintain or store a Unit improperly, carelessly, unsafely or in violation of any applicable law or regulation or for a purpose other than in the normal and ordinary course of your business; (b) abandon a Unit; (c) lease a Unit or permit the use of a Unit by anyone other than you, without our prior written consent; (d) sell, assign, transfer or create or allow to exist any lien, claim, security interest or encumbrance on any Unit or your rights and benefits under any CVA, except in our favor; or (e) remove a Unit from the United States. A Unit is and will remain personal property regardless of its use or manner of attachment to realty. We have the right (but not the obligation) to inspect a Unit and its maintenance records, and observe its use and determine its hours of usage. You, at your expense, will maintain each Unit in good operating order, repair and condition and perform maintenance at least as frequently as stated in an applicable operator's guide, service manual, or lubrication and maintenance guide. You must not alter a Unit or affix any accessory or equipment to a Unit if doing so will impair its originally intended function or reduce the Unit's value.

9. **Loss or Damage** You will bear the risk of loss to a Unit. A "Casualty Occurrence" will occur if a Unit is worn out, lost, stolen, destroyed, taken by government action or, in our opinion, irreparably damaged. You will provide us prompt written notice of any Casualty Occurrence. In the event of a Casualty Occurrence, you will pay to us within thirty (30) days of the Casualty Occurrence, the sum of all amounts then due under this Contract with respect to such Unit (including any late charges and fees) and the present value of all unpaid, future payments for such Unit. Present values will be determined by discounting the remaining balance owed for such Unit (as we will reasonably determine) at the implicit interest rate of this Contract. Upon making this payment, your obligations related to such Unit will terminate.

10. **Insurance** You, at your expense, must keep each Unit insured with a commercial insurance policy for our benefit. This insurance must include physical damage insurance that will protect each Unit against all risks for its full insurable value. You must also maintain commercial general liability insurance in an amount reasonably acceptable to us. All insurance must be in a form and with companies approved by us. The physical damage insurance will specify you as named insured and us as loss payee, and the general liability policy will specify you as named insured. All insurance will be primary, without the right of contribution from any insurance carried by us. You must promptly notify us of any occurrence that may become the basis of a claim. You must also provide us with all requested pertinent data. Upon demand, you must promptly deliver to us evidence of insurance coverage. Notwithstanding anything to the contrary, you acknowledge and authorize us to receive the return of any unearned premiums, including without limitation any refunds resulting from cancellation, nonrenewal, voidance or adjustment of your insurance policy financed with us, if the policy is underwritten by Caterpillar Insurance Company or its affiliates. You agree that such unearned premiums are being forwarded on your behalf, credited to you and will be applied by us to any unpaid balances on your account.

11. **Events of Default** Each of the following is an event of default ("**Event of Default**"): (a) you fail to make a payment when due; (b) a representation or warranty made to us in connection with this Contract is incorrect or misleading; (c) you fail to observe or perform a covenant, agreement or warranty and the failure continues for ten (10) days after written notice to you; (d) a default occurs under any other agreement between you or a guarantor of this Contact (each, a "Guarantor") and us or an affiliate of ours; (e) you or a Guarantor cease to do business, die, become insolvent, make an assignment for the benefit of creditors or file a petition or action under a bankruptcy, reorganization, insolvency or moratorium law, or a law for the relief of, or relating to, debtors; (f) the filing of an involuntary petition under a bankruptcy statute against you or a Guarantor, or appointment of a receiver, trustee, custodian or similar official to take possession of your properties or those of a Guarantor, unless the petition or appointment ceases to be in effect within thirty (30) days after filing or appointment; (g) there is a material adverse change in your or a Guarantor's financial condition, business operations or prospects; (h) there is a termination, breach or repudiation of a Guarantor's guaranty; and/or (i) there is a breach in any respect of any covenant or agreement in Section 14 hereof.

12. **Remedies** If an Event of Default occurs, we will have the rights and remedies provided by this Contract. We will also have all rights and remedies provided a secured party under the Uniform Commercial Code and any other law. Among these rights and remedies are to: (a) proceed at law or in equity to enforce specifically your performance or to recover damages; (b) declare this Contract in default, and cancel this Contract or otherwise terminate your right to use any Unit and your other rights, but not your obligations; (c) declare all amounts due or to become due under this Contract immediately due and payable; (d) recover additional damages and expenses suffered by us due to the Event of Default; (e) enforce the security interest granted herein; (f) require you to assemble Units and make them available to us at a place we designate; (g) enter premises where a Unit may be located and take immediate possession thereof and remove (or disable in place) such Unit (and any unattached parts) without notice, liability, or legal process; (h) exercise any rights and receive any benefits under any CVA; (i) cancel any CVA and receive the refund of any portion of the purchase price paid thereunder that we financed but had not yet received from you as of the date of the Event of Default; and (j) if we financed your obligations under an extended warranty agreement such as an Equipment Protection Plan, Extended Service Contract, Extended Warranty, Customer Service Agreement, Total Maintenance and Repair Agreement or similar agreement, we may cancel such agreement on your behalf and receive the refund of the agreement fees that we financed but had not received from you as of the date of the Event of Default. You agree to pay all charges, costs, expenses and reasonable attorney's fees incurred by us in enforcing this Contract. You agree that proceeds received from the sale of any Unit will be applied first to reimburse us for all expenses of collection and enforcement of this Contract, including our reasonable attorneys' fees and legal expenses, and then to obligations owed under this Contract. Any remaining proceeds will then be applied to any other indebtedness or obligations owed by you to us and our affiliates. To the extent you are entitled to a refund from us, you agree we will have the right to offset any obligation that you have with us or our affiliates with such refund. You must promptly pay any deficiency to us. The remedies provided to us are cumulative and in addition to all other remedies at law or in equity. If you fail to perform any of your obligations under this Contract, we may (but need not) thereafter perform such obligation. You must pay the resulting expenses incurred by us on demand.

13. **Buyer's Representations** You represent and warrant to us that (a) this Contract constitutes your valid obligation, legally binding upon you and enforceable according to its terms; (b) you will use each Unit for business purposes only and not for personal, family or household use; (c) you must promptly pay all taxes, assessments, fees and other charges arising from this Contract or the Units, except for our income taxes; (d) you must provide all financial information and reporting that we may reasonably require; (e) all credit, financial and other information submitted to us in connection with this Contract is and will be true, correct and complete; (f) you will not change your name, principal place of business or primary residence and, if a business entity, state of formation or form of business organization (including any merger, consolidation, reincorporation or restructure) without prior written notice to

us; (g) you must not assign this Contract or any right or obligation under it without our prior written consent; (h) we may share any of your information provided by you or gathered by us with Cat Financial and any affiliate of Cat Financial that has or may extend credit to you and with any assignee (as such term is defined in Section 6) and (j) you will defend at your own expense any action, proceeding or claim affecting or arising from the Units. In the event any Unit is equipped with a Unit monitoring system such as Cat® Product Link, you agree not to remove, disable or impair such Unit monitoring system, and to permit Caterpillar Inc. and all of its subsidiaries and affiliates, (collectively "Caterpillar"), and Caterpillar dealers to access data concerning such Unit, its condition and its operation transmitted from the monitoring system. The information may be used (i) to administer, implement and enforce the terms and conditions of this Contract, (ii) recover the Unit if necessary, and (iii) to improve Caterpillar's products and services. You agree that information transmitted may include the serial number, VIN, Unit location, and operational and other data, including but not limited to fault codes, emissions data, fuel usage, service meter hours, software and hardware version numbers, and installed attachments.

You agree that messages regarding active transactions you have with us may be delivered by telephone call (whether prerecorded voice or autodialed or not) or sent via text message or SMS (whether autodialed / texted or not), or message sent through a social media or similar platform, to any landline or mobile phone number submitted in connection with the credit application process or subsequently as a business contact number for you. You agree to update your business contact information, including any mobile number submitted as a contact, with us if it changes during the duration of this Contract. You understand and agree that collections messaging may occur, even if you have registered certain preferences regarding a mobile number that is also a business contact number.

Caterpillar publishes its Data Governance Statement ("Data Governance Statement") covering matters relating to data collected by Caterpillar, including geolocation and operational data relating to equipment or owners or operators of the Units. In addition, Caterpillar's Global Data Privacy Statement ("Privacy Statement") describes how Caterpillar collects, processes and shares information that relates to an identified or identifiable individual ("Personal Information") and rights that individuals might have under applicable data privacy laws. By entering into this Contract, Buyer agrees: (1) that it has received and reviewed the Data Governance Statement online at https://www.caterpillar.com/datagovernance and the Privacy Statement online at https://www.caterpillar.com/dataprivacy; (2) to the collection, use, disclosure and sharing of information, including personal information, as set forth in the Data Governance Statement and the Privacy Statement; and (3) that it will provide any individuals access to or a copy of the Data Governance Statement and the Privacy Statement before providing the individual's information to us or our affiliates. Buyer (or individuals representing Buyer) may also authorize and/or consent to the collection, use, disclosure and sharing of information and/or Personal Information in other agreements or documents with us, our affiliates or Caterpillar dealers, and nothing contained herein shall interfere with or affect such agreements or documents in any way.

14. **Sanctions**  None of (a) you, or any of your respective directors, officers or employees, subsidiaries, or any Guarantor, or any beneficial owner of you or any Guarantor, or any person holding a controlling interest in you or any Guarantor (each, a "Relevant Person"), or (b) to your knowledge, having made reasonable enquiries, any agent of yours that will act in any capacity in connection with or benefit from this Contract (including any addendum hereto) and the financing hereunder, is currently or at any time a Sanctioned Person.

"Sanctioned Person" means, at any time, (I) a person listed in any sanctions-related list of designated persons maintained by the U.S. Department of the Treasury, the U.S. Department of Commerce, the U.S. Department of State, or by the United Nations Security Council, the European Union, or any EU member state, or (II) any person owned or controlled by any such person or persons in aggregate.

No Unit or other proceeds received under the terms of this Contract will be used by you or any Guarantor, or any other Relevant Person, or to your knowledge, having made reasonable enquiries, by any of your agents, sublessees, or other users of the Unit, in violation of, or which shall cause us or our affiliates to be in violation of, any applicable laws, rules, or regulations relating to (A) bribery or corruption, (B) anti-money laundering, (C) terrorism, (D) economic or financial sanctions, or (E) trade embargoes.

15. **Successors and Assigns; Counterparts**  This Contract is for the benefit of, and is binding upon, your and our respective permitted successors and assigns. Although multiple counterparts of this document may be signed, only the counterpart accepted, acknowledged and certified by us on the signature page as the original will constitute original chattel paper. A photocopy or facsimile of this Contract will be legally admissible under the "best evidence rule." A signed copy of this Contract and any related document sent electronically will be treated as an original document and will be admissible as evidence thereof, and all signatures thereon will be binding as if manual signatures were personally delivered.

16. **Effect of Waiver; Entire Agreement; Notices; Applicable Law**  A delay or omission by us in exercising any right or remedy will not impair such right or remedy. A delay or omission by us will not be construed as a waiver of any Event of Default. Any waiver or consent by us must be in writing. This Contract, each attachment and schedule referencing this Contract, and any riders or addenda completely states our and your rights and supersedes all prior agreements with respect to a Unit. All notices must be in writing, addressed to the other party at the address stated on the front or at such other address as may be furnished in writing. This Contract is governed by and construed under the laws of the State of Tennessee, without giving effect to the conflict-of-laws principles. You consent to the jurisdiction of any state or federal court located within the State of Tennessee. **The parties waive the right to trial by jury in any action arising out of or related to this Contract, the obligations or the Units.**

17. **Modification of Contract; Miscellaneous**  No waiver, modification or change in this Contract will bind us unless provided by us in writing. Oral agreements are not binding. You agree that we may correct patent errors herein and fill in blanks including serial numbers, VIN numbers, and dates. Headings in this Contract are inserted for convenience only. Headings do not affect the meaning or interpretation of this Contract. If a provision of this Contract is invalid under any law, it will be deemed omitted. Any such deemed omission will not invalidate the remaining provisions. All your obligations under this Contract survive the expiration or termination of this Contract if necessary to give full effect to the terms of this Contract. Time is of the essence under this Contract.

**Until this Contract (or identical counterpart thereof) has been signed by our duly authorized representative, it will constitute an offer by you to enter into this Contract with us on the terms stated herein.**